**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| UNITED STATES<br><br>    v.<br><br>JAYSON A. MANGIARACINA | No. 3:06-cr-35 (AWT) |

## ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

A court may grant early termination of supervised release

in certain circumstances:

> The court may, after considering the factors set forth in
> section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),
> (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term
> of supervised release and discharge the defendant released
> at any time after the expiration of one year of supervised
> release, pursuant to the provisions of the Federal Rules of
> Criminal Procedure relating to the modification of
> probation, if it is satisfied that such action is warranted
> by the conduct of the defendant released and the interest
> of justice.

18 U.S.C. § 3583(e)(1).  After considering the factors

referenced in § 3583(e), the non-exclusive list of factors set

forth in U.S.S.G. § 5D1.4, Application Note 1(B), the

defendant's arguments set forth in his motion (and reply) and

the arguments by the government in its response, and making an

individualized assessment of the need for ongoing supervision

for Jayson Mangiaracina, the court concludes that his motion for

early termination of supervised release should be denied.

The defendant pled guilty to a two-count information which charged him, in Count 1, with Use of Interstate Facility to Coerce a Minor to Engage in Sexual Activity, and in Count 2, with Fraud and Related Activity in Connection with Computers. On July 27, 2006, the defendant was sentenced to a 99-month term of imprisonment on Counts 1 and 2, to be served concurrently and to be followed by a ten-year term of supervised release.  In the government's opposition to the instant motion, it accurately summarizes the defendant's offense conduct:

> The Presentence Report details how the defendant, who was twenty-one years old at the time, convinced a fourteen-year-old victim to send a picture of herself revealing her bare back and upper buttocks. PSR ¶¶ 5-6. He then began to harass the victim, through two separate accounts, and asked her about the size of her breasts and to take naked pictures of herself using a web camera, which she ultimately did. PSR ¶¶ 7-8. Mr. Mangiaracina also threatened the victim and said that if she did not "give him head" he would hack into her high school website and post the picture she had sent, and he continued to threaten her if she did not give him oral sex and then ultimately arrived at her house. PSR ¶¶ 8-9. The defendant coerced the victim into performing oral sex on him. PSR ¶ 10.
>
> A few days later, he began threatening her again and when she blocked him, he circumvented the block and continued to harass her until she became so upset that she reached out to a friend who told her own (the friend's mom) and the mom contacted the police. PSR ¶¶ 11-13. An undercover Federal Bureau of Investigation agent took over the victim's account and after the defendant again threatened the undercover (posing as the victim) unless he received oral sex and tried to also get the victim's friend to perform oral sex, Mr. Mangiaracina was ultimately arrested. PSR ¶ 14.

2

Gov't's Response (ECF No. 66) at 4.  As the government points out, "[a]t the time of sentencing, the defendant had a prior conviction for disorderly conduct after he jumped into his ex-girlfriend's car and damaged the vehicle by scratching it and denting it, PSR ¶ 30."  Id.  This concerning conduct is described in more detail in paragraph 30 of the Presentence Report.

With respect to defendant's conduct after he completed his term of imprisonment, the government states, accurately, that:

> [The defendant] appeared to be in compliance with the conditions of his release—and had employment and stable housing—but then in February of 2015, the West Hartford Police began an investigation into the defendant for harassment of a female at a gym and they soon uncovered that he was back to what got him in trouble in the initial federal case. See Dkt. Entry No. 55, Final Violation Report ("Several documents were provided to the U.S. Probation Office by the West Hartford Police Department which reflected Mr. Mangiaracina was communicating on the Internet, specifically on Craigslist, where he had been posting adds seeking: the company of females; sexual acts for payment; for the sale of personal items, to include the children's Pokeman trading cards; to make customized sex tapes with his unidentified 18 year old girlfriend, in exchange for money; communications with individuals with whom he had seen in the community; and selfies of females to be submitted for what appeared to be a contest like promotion, where monies were being offered for 1st, 2nd and 3rd place.")

Gov't's Response at 4-5 (emphasis added).

At the point in time when the defendant engaged in this conduct, he had previously appeared before the court for a revocation hearing on October 16, 2014, after having

3

unauthorized contact with a minor.  Being required to appear before the court on October 16, 2014 was not sufficient to deter the defendant from engaging in the above-described conduct the following year.  On September 24, 2015, the court revoked the defendant's supervised release and sentenced him to a 12-month term of imprisonment to be served consecutively to a state sentence he was then serving and to be followed by a ten-year term of supervised release.

Even though the defendant had been sentenced in 2015 to a 12-month term of imprisonment for a supervised release violation,

> [o]n February 6, 2020, Mr. Mangiaracina left a sexually explicit note on a female's car at her place of employment. . . . It should be highlighted that prior to placing the note on the female's vehicle, Mr. Mangiaracina's only interaction with this individual was briefly at her place[] of employment.

Probation Form 12B (ECF No. 60) at 1-2.

In light of the foregoing, the court agrees with the government that "[t]he defendant has demonstrated previously on multiple [occasions] that he needs [the] guardrails" that are in place as a result of being on supervised release.  Gov't's Response at 6.  The court concludes the purpose of sentencing that most needs to be served in this case is protection of the public.  See § 3553(a)(1)(c).  Early termination is not appropriate in this case because of the defendant's history of

4

court-reported violations during his terms of supervision, because of his failure to substantially comply with his conditions of supervised release, and because early termination of the defendant's supervised release would jeopardize public safety.  See Guidelines § 5D1.4 Application Note 1(B) clauses (i), (iii), and (vi).

For the reasons set forth above, the defendant's Motion for Early Termination of Supervised Release (ECF Nos. 61 and 63) is hereby DENIED.

It is so ordered.

Signed at Hartford, Connecticut, this 7th day of May, 2026.

/s/AWT<br>
Alvin W. Thompson<br>
United States District Judge